IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| NAZARIO CHAVEZ, JR., #01539693 | § | |
| VS. | § | CIVIL ACTION NO. 9:11cv121 |
| DARRON LANE, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF PARTIAL DISMISSAL

Plaintiff Nazario Chavez, an inmate confined in the Eastham Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit under 42 U.S.C. § 1983. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

**I.   FACTS**

The original complaint was filed on July 21, 2011. On February 9, 2012, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id*. at 180. The hearing is "in the nature of a motion for more definite statement." *Id*. at 180-181. The Plaintiff testified as to the factual basis of his claims. Regional Grievance Office representative Phillip Brooks and Warden Dwayne Dewberry testified under oath about prison policies and information contained in the Plaintiff's prison records. Nurse Mary Gautcher testified as to the

1

contents of Plaintiff's medical records.

Plaintiff claims in his complaint and testified at greater length at the *Spears* hearing that on August 13, 2009, at the Eastham Unit, he was going into the shower. He testified he took a towel and looked for a locker in which to place his clothes when Defendant Sergeant (now Lieutenant) Lane attacked him from behind. Plaintiff testified he was naked and had his clothes in his hand and froze at the attack, then laid down on the floor in the shower and Defendant Lane jumped on his back. Plaintiff claimed Defendant Lane hit him on the back of his head multiple times, then grabbed his head and banged it into the floor until Plaintiff "passed out." He testified he was in fear of death and was unclear what would happen.

He further testified he "woke up on the floor" and Defendant Lane was still there; he stated he had to "break free," but was unclear whether Defendant Lane was still allegedly on his back at that time or what their status was. He testified that Lt. Gillitin came into the shower and "took" Defendant Lane off of him and separated them. The lieutenant picked Plaintiff up, handcuffed him and took him to the infirmary. He testified that Defendant Lane said that the incident had been a "use of force," although Plaintiff was unclear as to what he thought Defendant Lane meant by that. Plaintiff testified that he had injured his head as a result of the alleged attack.

At the medical clinic, a video camera was brought in and pictures taken. Plaintiff testified that the nurse was the only one asking questions, which were limited to the nature of "is anything wrong" and to that effect. He testified he was shaken up and that the nurse became upset with his responses. He thought he had been bleeding, but was unsure. However, he testified he received no stitches or bandages; he simply was subjected to being recorded on video and then taken to pre-hearing detention ("PHD").

Plaintiff testified that he was written up a disciplinary case for assaulting an officer on Defendant Lane's allegedly "false statement" that Plaintiff had first hit him with a closed fist. He was subsequently found guilty of the charge. Plaintiff testified that he had never hit anyone, then or before, and had no "bad blood" with anyone at the Unit.

He further testified that he named Warden Erwin and Assistant Warden Oliver as Defendants because they were in the building at the time and were responsible for their staff's behavior. He cited a reference document called the "Jailhouse Lawyer's Handbook" that advised suing the wardens as responsible parties on that basis.

Warden Dewberry testified that Plaintiff was taken to PHD on August 13, 2009 with a charge of staff assault. He was subsequently found guilty and received major punishment including solitary confinement, reduction in classification level, loss of 43 days' good time and various privilege restrictions. Plaintiff had been in general population previously.

Nurse Gautcher testified that medical records showed Plaintiff had been brought to the infirmary at 7:22 p.m. on August 13, 2009. He was seen by Steven Martin, LVN, at the infirmary and a use of force physical was conducted. Records showed that Plaintiff denied being injured or having any respiratory problems. Examination showed that there were no injuries or respiratory problems and Plaintiff was released from medical care. There were no records of any follow-up complaints made by Plaintiff.

Regional Grievance Office representative Brooks testified that Plaintiff had not exhausted his administrative grievances because records showed that he had only filed a Step 1 grievance, but no Step 2 grievance. He presented Plaintiff's grievance, medical and classification records for the Court's review, and advised that Plaintiff's use of force records were being obtained and would be

3

forwarded.

Plaintiff then testified that he had filed a Step 2 grievance but had no copy and did not retain the original response. He had no objection to the Court's review of his records.

## II. DISCUSSION AND ANALYSIS

To state a constitutional claim for relief under § 1983, a plaintiff must allege a right secured by the Constitution or the laws of the United States and a violation of that right by one or more state actors. *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 200 (5th Cir. 1994). To be a state actor subject to liability under Section 1983, the defendant must act "under color of any statute, ordinance, regulation, custom, or usage, of any State of Territory or the District of Columbia." 42 U.S.C. § 1983. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S. Ct. 1031, 85 L. Ed. 1368 (1941)). The Supreme Court has formulated a two-part approach to the issue of state action:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible . . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982).

Plaintiff alleges that Defendant Lane "attacked" him and banged his head into the floor of the shower at the Eastham Unit. He further alleges that Warden Erwin and Assistant Warden Oliver

are liable as Defendant Lane's supervisors.

### A. Excessive Use Of Force

The Supreme Court has emphasized that the core judicial inquiry in an excessive use of force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992). The Court additionally emphasized that a use of force claim has subjective and objective components. In other words, a court must consider whether the officials acted with a "sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.* at 8.

Several factors are important in making an assessment of the situation. The claimant must allege and prove there was an "unnecessary and wanton infliction of pain." In deciding whether the use of force was wanton or unnecessary, a court may consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of forceful response." *Id*. at 7. (internal quotation and citation omitted). The absence of a serious injury is relevant to but not dispositive of the excessive force claim. *Id*. The Fifth Circuit has instructed the courts in this circuit to consider these five factors in analyzing excessive use of force claims. *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992); *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999). The Supreme Court additionally emphasized that the concept of what constitutes cruel and unusual punishment "draws its meaning from the evolving standards of decency that mark the progress of a maturing society." *Hudson v. McMillian*, 503 U.S. at 8 (citations omitted).

Plaintiff's allegations, if taken as true, arguably states a claim for excessive use of force in

this case. Therefore, Defendant Lane must answer this charge.

### B. Respondeat Superior

Plaintiff has also claimed that Warden Erwin and Assistant Warden Oliver are liable merely for their supervisory capacities.

In order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates the defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). None of these individuals participated in the alleged acts of misconduct. They were sued because of their supervisory roles, but the doctrine of *respondeat superior* does not apply in § 1983 actions. *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir. 1990). Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Neither condition is satisfied by Plaintiff's bare allegations and supplemental testimony at the *Spears* hearing. Therefore, Plaintiff's *respondeat superior* claims fail and these supervisory personnel will be dismissed.

## III. CONCLUSION

It is therefore

**ORDERED** that the Plaintiff may proceed with his excessive use of force claim against Defendant Lane. It is further

**ORDERED** that the Plaintiff's remaining civil rights claims against Defendants Erwin and Oliver are **DISMISSED WITH PREJUDICE**.

So **ORDERED** and **SIGNED** this **13** day of **February, 2012.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE